**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Ralph MAZA a/k/a Rafael Maza, Defendant–Appellee.**

**No. 91–3557.**

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1993.

Joseph K. Ruddy, Karla Spaulding, Asst. U.S. Attys., Tampa, FL, for plaintiff-appellant.

L. Michael Roffino, Coral Gables, FL, for defendant-appellee.

Before FAY and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

FAY, Circuit Judge:

The United States appeals the dismissal of Count Four of its indictment against the Defendant–Appellee, Ralph Maza, charging him with a violation of 21 U.S.C. § 848, the Continuing Criminal Enterprise (CCE) statute. Maza moved for dismissal of this count on the ground that it violated his Fifth Amendment rights under the Double Jeopardy Clause because he previously had been indicted and convicted, in the Southern District of Florida, of a violation of 21 U.S.C. § 846. Section 846, Maza argues, is a lesser included offense of § 848; therefore, Count Four is double jeopardy barred unless the government shows that this second prosecution is based on newly discovered evidence pursuant to the due diligence exception to the double jeopardy rule set out in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and its progeny.

Relying on our recent decision in *United States v. Gonzalez*, 921 F.2d 1530 (11th Cir.1991), the District Court rejected Maza's double jeopardy argument. 764 F.Supp. 1451. Nevertheless, it held that the government's failure to bring the CCE charge in the first prosecution constituted a failure to exercise due diligence which precluded the government from bringing the CCE charge in a second proceeding pursuant to our decision in *United States v. Boldin*, 772 F.2d 719 (11th Cir.1985), *modified* 779 F.2d 618 (1986), *cert. denied* 475 U.S. 1048, 1098, 1110, 106 S.Ct. 1269, 1498, 1520, 89 L.Ed.2d 577, 899, 917 (1986). We affirm the holding that Count Four is not barred by double jeopardy; however, because we find the trial court erred in construing *Boldin* and the due diligence exception, we reverse and remand this case with instructions to the District Court to reinstate Count Four.

## I. BACKGROUND

On October 12, 1989, Ralph Maza was arrested at his residence in Miami and officers seized 22 kilograms of cocaine from his garage. Following his arrest Maza confessed that for some period of time he had allowed his garage to be used to store cocaine in exchange for payment of $50 per kilogram.[1] Maza's arrest was a product of cooperation between federal officials conducting separate but overlapping investigations. In the case at bar, government agents were investigating a large scale cocaine trafficking network in middle Florida and had already charged numerous members of the organization. As of the summer of 1989 the government knew that cocaine imported by this organization was transported to and stored in Miami at the home of someone known as "the painter." R2–634–13. The identity of "the painter" was unknown. *Id.*

After "debriefing" by government agents in Tampa, a cooperating defendant, Jones, was sent to assist federal agents conducting Operation Greenback in Miami, a separate investigation. *Id.* As a part of his cooperation Jones was to assist Operation Greenback agents in locating "various residences and businesses," one of which was "the painter's" house. R2–634–14. Jones identified Maza's house as that of "the painter." It was put under surveillance, and Maza's arrest soon followed. *Id.* at 13–14.

Maza was then charged in the Southern District of Florida, along with two other defendants,[2] with (I) possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1); (II) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; and (III) knowingly and willfully conducting or attempting to conduct a financial transaction involving the proceeds of narcotics trafficking, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (2).[3] R1–579 (Exhibit B). Maza pled guilty to the second of these counts[4] and was sentenced to ten years and one month of incarceration, to be followed by five years supervised release. *Id.* (Exhibit C).[5] Maza is currently serving this sentence.

On July 18, 1990, after his conviction in the Southern District, Maza was indicted in the Middle District of Florida in connection with the on-going investigation of the drug ring there. *See* Second Superseding Indictment, R1–366. Count Four of this indict-

---

1. We note in passing that although both sides refer to this confession it is not included in the record on appeal. Therefore, we rely on the representations made by both parties as to the confession's content.

2. One of these defendants, Carlos Orsono–Restrepo, is also charged in the present case. He, like Maza, was added to the case in the Second Superseding Indictment filed July 18, 1990.

3. The indictment contained a fourth charge not at issue in this appeal.

4. As a part of a plea agreement, the government dropped the remaining charges.

5. This sentence was imposed after the court found, over the government's objection, that Maza qualified for a two level decrease under the Guidelines, on the grounds that he was a minor participant in the conspiracy charged and that he had accepted responsibility for his crimes. *Id.* (Exhibit D) at 4–8.

ment charges Maza with violating 21 U.S.C. § 848 (CCE), *id.* at 12–14, and with various substantive offenses relating to narcotics importation and distribution. *Id.* at 17–22. The predicate acts alleged to support Count Four are violations of 21 U.S.C. § 952 (importation), and 21 U.S.C. § 952 and 963 (importation and attempt or conspiracy to import).[6]

On February 20, 1991, Maza moved to dismiss Count Four on the ground that his earlier conspiracy conviction barred the CCE charge because it was a lesser included offense of the CCE. Therefore, he argued, to avoid double jeopardy, the government must show that it had new evidence of a separate conspiracy which it could not, through the exercise of due diligence, have discovered at the time of his first prosecution. The crux of his argument is that both charges are based on the same conduct.

In response, the government asserted that it was not relying on the earlier prosecution as it was now charging a conspiracy to import rather than a conspiracy to possess with intent to distribute. The government asserted: "In the case at bar, the government can, and will, establish that the defendant, Maza, was a co-conspirator in the importation of cocaine, a conspiratorial agreement that was not set forth in the [earlier] indictment." R1–561–12–13. The government's response was somewhat ambiguous as to whether the importation conspiracy charged was *factually*, as well as legally, distinct from that with which Maza had already been charged. It appeared possible that the government was trying to hold Maza liable for an importation conspiracy based on no more than his agreement to store cocaine in his garage.

The District Court ordered an evidentiary hearing on Maza's motion to dismiss, citing precedent of this Circuit holding that

where a defendant has made a *prima facie* showing that double jeopardy would apply the government must present some evidence to show that the second charge is based on "a separate," or "newly discovered," conspiracy. *See, e.g., Boldin,* 772 F.2d at 731. Although the order for a hearing and the authority cited suggests the District Court found that double jeopardy would bar Count Four unless the government offered evidence of a separate conspiracy, the Court did not so hold. Instead, the court held that our decision in *Gonzalez,* which limited application of the Supreme Court's opinion in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) to "single act crimes," "disposed of" Maza's argument that the § 846 conspiracy charge was a lesser included offense of the CCE charge. On this basis the court found Count Four was not double jeopardy barred. R1–590–7. Because the court summarily rejected the lesser included offense argument it did not analyze or discuss the government's evidence of a separate conspiracy.

Despite its ruling that this prosecution was not barred by double jeopardy, the District Court thought it was relevant to the resolution of Maza's motion that the prosecutors in both districts "had precisely the same evidence against the defendant. . . ." R1–590–8.[7] "The government has conceded that the prosecutor in the Southern District had available to him all of the information which was relied upon by the prosecutor in this District, but failed to charge the defendant with a CCE violation." *Id.* Believing that *Boldin* compelled dismissal under these circumstances, the court held that the government's "lack of due diligence . . . bars the prosecution in this case." *Id.* We find the trial court misinterpreted our opinion in *Boldin* and thereby misapplied the due diligence rule. Accordingly, we reverse this ruling. We

---

6. The indictment charges him with "knowingly and intentionally *attempt[ing]* to import" cocaine. R1–366–14 (emphasis added). The government argued in response to Maza's motion that it will attempt to establish "a *conspiracy* to import cocaine." R1–561–12 (emphasis added). Section 963 refers to *both* attempt and conspiracy.

7. By saying that both prosecutors "had" the "same evidence" the court obscured the issue of whether both prosecutors relied upon and used the "same evidence"—a consideration crucial to the outcome in this case.

discuss the double jeopardy issue to eliminate any possible confusion surrounding its application.

## II. ANALYSIS

This case requires us to launch into an examination of the Double Jeopardy Clause of the Fifth Amendment, "the decisional law [of which] is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). While these waters are not uncharted, neither is the course easy to follow. The issue raised is whether the Double Jeopardy Clause requires the government to charge, in one proceeding, all of the crimes it has reason to believe a defendant has committed. We find in this case that it does not. Unfortunately, there are no fixed stars to guide us in distinguishing one case from the other—only dim lights—because the resolution depends upon defining what constitutes a "separate conspiracy." This is an endeavor that entails sailing perilously close to the "single transaction" test the Supreme Court has thus far persistently disavowed, even though some form of such a test runs like an invisible current through many of the Court's decisions. In contrast to the difficulties posed by deciding what constitutes a "separate" conspiracy, the due diligence exception is relatively straightforward and so we turn to that issue first.

### Due Diligence

■■■ The due diligence exception was created to permit a second prosecution in those cases in which the Double Jeopardy Clause would otherwise bar it. The exception was articulated in *dicta* in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) where the Court announced the general rule that the "Fifth Amendment forbids successive prosecution

and cumulative punishment for a greater and lesser included offense." *Id.* at 169, 97 S.Ct. at 2227. In a footnote, however, the Court stated, "[a]n exception [to this rule] may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." *Id.* at 169 n. 7, 97 S.Ct. at 2227 n. 7.

In the present case the District Court applied the due diligence concept to preclude a second prosecution which he had already decided was *not* barred by double jeopardy. This is precisely the reverse order of the correct application of the doctrine. The Double Jeopardy Clause does not preclude bringing in a second action any charge which might have been brought in the first action. Rather, it only precludes those which *must* have been brought in the first or be forever lost. The due diligence doctrine provides an exception in this latter situation. Thus, it follows, that if the government need not have brought all of its charges in the first action, there was nothing for it to be diligent about.[8]

Given the District Court's ruling that this second prosecution did not offend double jeopardy principles, the due diligence exception was incorrectly applied. However, the question remains whether the District Court correctly decided Maza's double jeopardy claim in the first instance. Although the court's analysis is somewhat confusing, we affirm the result. To explain this conclusion we move out of the relatively narrow straits of the exception, into the hazardous waters of double jeopardy analysis itself.

### Double Jeopardy
### Section 846 and the CCE

■■■ We think it is fairly clear that 21 U.S.C. § 846 (conspiracy to possess with

---

8. Our holding in *Boldin* does not compel a different result. The language that Maza refers to in *Boldin* is *dicta* because the court had already held that (with some exceptions) there was no double jeopardy bar to the prosecutions in that case. *Boldin*, 772 F.2d at 730–32. Thus, this discussion was not necessary to the decision in

the case. *See also United States v. Binker*, 799 F.2d 695, 699 (11th Cir.1986) (*per curiam*), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987) ("assuming, but expressly not deciding, that this theory [due diligence as a bar to prosecution] would provide a ground" for relief).

intent to distribute) is a lesser included offense of 21 U.S.C. § 848 (CCE) for double jeopardy purposes. In *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality opinion), the Supreme Court suggested in *dicta* this construction of the two statutes for purposes of double jeopardy. *Id.*, 432 U.S. at 147–54, 97 S.Ct. at 2214–18.[9] This Circuit has adopted that suggestion. *See, e.g., United States v. Nixon*, 918 F.2d 895, 907 (11th Cir.1990) ("This circuit has long held that a section 846 conspiracy is a lesser included offense of the more serious charge of section 848 CCE.").

These decisions were not disturbed by the Supreme Court's ruling in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985),[10] that the substantive, predicate offenses, as distinguished from conspiracy, were not lesser included offenses of CCE for purposes of double jeopardy. *See, e.g., United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir.1986) (reiterating, post *Garrett*, the rule that § 846 is lesser included offense of 848 (CCE)). In fact, in *Garrett* the Court was at pains to point out that the substantive predicate

offenses were distinguishable from the conspiracy offense analyzed in *Jeffers*. *Garrett*, 471 U.S. at 794, 105 S.Ct. at 2419.[11]

The District Court relied on our opinion in *United States v. Gonzalez*, 921 F.2d 1530 (11th Cir.1991) to reject Maza's lesser included offense argument because it states that the Supreme Court's decision in *Grady* "is, by its facts and the facts of the cases it relies upon, limited to single act crimes." *Gonzalez*, 921 F.2d at 1537–38. However, we also stated that "*Garrett* remains the proper precedent for double jeopardy analysis" for "complex crimes." *Id.* As *Garrett* did not overrule our prior holdings in this area, it was not necessary, as the District Court here thought it was, to apply *Grady* to determine whether § 846 is a lesser included offense of the CCE.[12]

It is well established that a prior prosecution for a lesser included offense normally bars reprosecution for the greater offense. *Brown*, 432 U.S. at 169, 97 S.Ct. at 2227. Given that § 846 is a lesser included offense of the CCE, the instant prosecution would seem to be barred unless the government qualifies for the due diligence excep-

---

**9.** *Jeffers* cannot be cited as holding that 846 is a lesser included offense of the CCE because this was not necessary to its decision. *See United States v. Aguilar*, 849 F.2d 92, 98 (3rd Cir.1988) (criticizing other courts for placing this construction on *Jeffers*). However, as the court in *Aguilar* noted, "Unlike a typical judicial assumption *arguendo* ... this one was based on a detailed rationale, including a close reading of the two statutes in question and a survey of the relevant legislation underlying the CCE provision." *Id.* It is also worth noting that eight of the nine Justices in *Jeffers* agreed that Jeffers' constitutional rights under double jeopardy were violated; they simply differed as to whether he had waived that violation by requesting separate trials. *See Jeffers*, 432 U.S. at 160 n. 7, 97 S.Ct. at 2221 n. 7 (Stevens, J. dissenting in part and concurring in the judgment in part).

**10.** *Garrett* might be more properly termed a plurality opinion. Although Justice O'Connor joined the majority opinion, her separate concurring opinion reveals that she believed the prosecution in question did not violate double jeopardy because the later prosecution rested, in part, on new evidence. *See Garrett*, 471 U.S. at 795, 105 S.Ct. at 2419 (O'Connor, J. concurring). This is an entirely different justification for finding no double jeopardy bar than the purely statutory basis offered in the majority by Justice

White. Justice O'Connor was willing to assume *arguendo* that *even the substantive predicate offense of importation of marijuana was a lesser included offense of the CCE*, given the interests meant to be protected by the Clause. She believed, however, that the additional evidence of a continuing violation insured that the second prosecution did not violate these interests. *Id.* at 797, 105 S.Ct. at 2420.

**11.** The Court studiously avoided the implications of *Jeffers* on the successive prosecution portion of its discussion, confining itself to comparing the lesser included offense question with the less complicated crime involved in *Brown*. *Jeffers* was discussed only in connection with the propriety of cumulative punishments. Significantly, the Court in *Garrett* offered as an alternative or additional justification for its holding, that Garrett had continued to commit offenses after his first prosecution and that the CCE charge was based on separate, albeit overlapping, evidence. *See Garrett*, 471 U.S. at 790–93, 105 S.Ct. at 2417–19. This is precisely the basis for our holding in this case.

**12.** *Grady* does not affect the analysis of this case at all, although it reflects a fact based inquiry not unlike the one we apply today, albeit to a different result.

tion articulated in *Brown*. However, that exception permits a second prosecution *only* where the government has "new" evidence to sustain a second prosecution, that is, either "new" in the sense that it is based on acts which took place *after* the acts prosecuted in the first indictment, or evidence of which the government was unaware at the time of the first indictment, despite the exercise of due diligence. The government concedes its evidence is not "newly discovered" evidence or based on subsequent acts of the defendant. *See, e.g.,* R1–590–8. Nevertheless, the prosecution in this case is permissible, not because of due diligence, but because, even though the lesser included offense rule applies on its face, it is not borne out by the facts. To illustrate this point and explain the nature of the analysis applicable to this case it is useful to examine the special problems raised by successive prosecutions in interpreting the Double Jeopardy Clause.

### The Problem of Successive Prosecutions

The Double Jeopardy Clause is interpreted as protecting a number of related, yet distinct interests, not all of which are raised in every case. One of these is protection against successive prosecution. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In this context, the Double Jeopardy Clause reflects concern for finality, for restraint of government overreaching in the form of harassment or coercion, and for the integrity of juries and verdicts. *See, e.g., Grady v. Corbin,* 495 U.S. at 516–19, 110 S.Ct. at 2090–92; *Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225; *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *United States v. Rodriguez,* 612 F.2d 906 (5th Cir. 1980) *(en banc), aff'd sub nom. Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). *See also* Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 278 (1965).

The integrity of our system of justice would be threatened if prosecutors could "shop" for a favorable judge or jury until they found one willing to convict, or until a judge imposed the sentence the prosecutors felt was appropriately severe. It would upset the already delicately balanced equities between the government and a criminal defendant if prosecutors could continue to charge the defendant with the same crime until they perfected their presentation of the evidence with several "rehearsals." Nor would it be desirable for prosecutors to repeatedly charge a defendant out of some illegitimate motive. "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." *Green,* 355 U.S. at 187, 78 S.Ct. at 223.

Set against these concerns is the government's legitimate interest in apprehending, prosecuting and punishing those who violate the law. Although the Double Jeopardy Clause clearly strikes the balance in favor of the defendant, it should not be construed so restrictively that government is unable to effectively enforce the law. Just as government oppression engenders contempt for justice, so contempt for law is engendered by the system's inability or failure to enforce it. Paradoxically, overemphasizing either set of these opposing values leads to the same evil: a diminished faith in and respect for the legitimacy of the criminal justice system.

The challenge then is to devise a test that enables a court to distinguish when two prosecutions are one too many, so as not to jeopardize that legitimacy. Unfortunately, case law interpreting the Double Jeopardy Clause is often applied without regard to the context in which it arose, i.e. cumulative punishment (or multi-count indictments) versus successive prosecutions. The rather indiscriminate application of rules from one context into another puts at risk many of the interests the Double Jeopardy Clause is intended to protect, as well as the government's ability to punish infractions of the law.

### Interpretation of "Same Offence"

█ The Double Jeopardy Clause provides that no person shall "be subject for

the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V, cl. 2. Although on their face these words seem to state an easily understood concept, in practice, defining the scope of their protection has been fraught with difficulties—none more so than the words "same offence." One thing is clear. Whatever else these words may proscribe, they surely were not intended to suggest that a person could not be "twice put in jeopardy" for the "same offence" if he commits the same offense twice. Whether a defendant has committed the same offense twice is a factual question. Therefore, for purposes of successive prosecutions, the question of whether a defendant is being put in jeopardy for the "same offence" cannot be determined solely with reference to the statutory elements of the offenses charged. Rather, there must also be some determination that the underlying facts that gave rise to the first prosecution are, or are not the sole basis for the second.[13] The Supreme Court, however, has resisted acknowledging the factual element of the double jeopardy inquiry, even though many of its opinions clearly rely, for their applicability to successive prosecutions, on an assumption about the facts.

For example, in the leading case, *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court articulated the following rule. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. This statement may be interpreted in at least two ways.

First, the emphasis on "proof of a fact" suggests an evidentiary or a "same evidence" test—a test which would to some extent focus on the events, not the charges. *See* Comment, *supra*, at 273 n. 52 (identifying *Blockburger* as a species of a "same evidence" test).

*Blockburger* has been interpreted, however, to require only a comparison of the elements of the statutes charged. *See Grady*, 495 U.S. at 521 n. 12, 110 S.Ct. at 2093 n. 12 (indicating that, while *Blockburger* has been mistakenly referred to as a "same evidence" test, it is actually "concerned solely with the statutory elements of the offenses charged."). This approach has serious shortcomings with respect to the analysis of successive prosecutions such as those considered in *Grady* because, in this context, the *Blockburger* rule would be overly restrictive in some cases and not restrictive enough in others. Read literally, the *Blockburger* rule might be taken to forbid a second prosecution involving a violation of exactly the same law—for example a charge of robbery—notwithstanding that it was based on a *different* robbery. Clearly, that is neither the result the Court intended nor the meaning of the Double Jeopardy Clause. Double jeopardy was not meant to immunize a defendant from prosecution if he violates the same law *again.*[14]

Conversely, the *Blockburger* approach is not restrictive enough when, because of overlapping and duplicative laws, the number of charges which may be leveled at a defendant on a given set of facts is limited principally by the prosecutor's imagination and creativity. By the simple expedient of

**13.** Saying that certain facts are "the basis" of a charge is not the same as saying certain facts tend to support the charge. *See Dowling v. United States*, 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990) (holding that double jeopardy did not bar presentation of evidence from the defendant's prior trial for bank robbery in a second trial for a different robbery). The situation in *Dowling* is similar to this case. Significantly, though, Dowling did not attempt to claim that his prior acquittal barred the prosecution of the second crime. *Id.* at 347, 110 S.Ct. at 671. Arguably, however, *Dowling* did not present a double jeopardy question, merely an evidentiary one, as F.R.E. 404(b) allows evidence of prior crimes to be introduced

under certain circumstances. If every such use raised a double jeopardy problem the exception itself would be constitutionally suspect.

**14.** Indeed, in part one of its opinion (the part that is much less frequently cited) the *Blockburger* Court held that the defendant could be separately punished for each individual transgression of the same statute, each constituting a separate offense. *Id.* 284 U.S. at 302–03, 52 S.Ct. at 181–82. The Court did not discuss the propriety of a separate trial for each of these separate violations because it was not faced with that issue.

indicting on new, previously untried theories of fault, the government could avoid much of whatever limitation *Blockburger* imposed on successive prosecutions, thereby endangering many of the interests the Clause has been interpreted to protect.[15]

This problem may be the one the Court intended to address with the lesser included offense rule laid down in *Brown*[16] because, unlike *Blockburger*,[17] *Brown* involved successive prosecutions. Even *Brown*, however, reveals that, in articulating the rule, the Court assumed that it would apply where a subsequent prosecution was based on the same set of facts as the first.[18] In *Brown* the Court said that the government may not, under the Constitution, endlessly "divide *a single crime* into a series of temporal or spatial units," bringing each as a separate prosecution. *Id.*, 432 U.S. at 169, 97 S.Ct. at 2227 (em-

phasis added). This statement must refer to the factual content of "single crime," not merely its statutory elements. To read *Brown* otherwise would have two negative effects. First, the rule would immunize a defendant from future prosecution if he commits the same crime again, whether prosecuted as the greater or lesser offense. Second, it would impose a rule of compulsory joinder on the government that, in cases such as the one before us, would be unwieldy and unrealistic.

Thus, there must be an exception to this rule when the second prosecution rests on evidence of a separate offense, though this inquiry comes close to the "single transaction test" which the Supreme Court has "steadfastly refused to adopt." *Garrett*, 471 U.S. at 790, 105 S.Ct. at 2417. *See also Grady*, 495 U.S. at 523 n. 15, 110 S.Ct. at

**15.** The *Blockburger* rule would represent a significant bar on successive prosecutions were it the case that a given set of facts could violate only a very limited number of laws. For example, until 1873 the Double Jeopardy Clause was only applied to felonies. *See Ex parte Lange*, 85 U.S. (18 Wall) 163, 172–73, 21 L.Ed. 872 (1873). At that time, "the number of felonies was much smaller ... than today ... [and] were punishable by death or deportation." *Leading Cases* (Grady v. Corbin), 104 Harv.L.Rev. 129, 154–55 (1990).

**16.** The *Brown* court may have been merely attempting to clarify that the *Blockburger* rule is one of mutuality. That is, it requires that *each* offense charged have elements distinct from the other. With lesser included offenses only the greater offense has elements that are distinct from the lesser offense. There is a tendency of some courts to find, when construing *Blockburger*, that if *one* offense has elements not present in the other that satisfies the test. That is an erroneous reading of *Blockburger*.

**17.** In *Blockburger*, 284 U.S. at 301, 52 S.Ct. at 181, the defendant was charged with, among other things, violating two separate statutes by virtue of one drug sale. He claimed that separate punishments for each count were barred by double jeopardy because they arose from the same act. *Id.* The Court unequivocally rejected the defendant's argument with the rule stated above, holding that defendant could receive separate punishment for each statute that his single act violated.

**18.** Indeed, this appears to be the basis for the holding in *Grady*. In *Grady* the defendant, Corbin, had been prosecuted for drunken driving

and crossing the median in an accident in which someone was killed. *Grady*, 495 U.S. at 511, 110 S.Ct. at 2087. Although at the time of his prosecution on the traffic violations the victim had died, some failure in communication between the state's prosecutors resulted in the prosecutor and the court at the traffic hearing being unaware that there was a death involved. *Id.* at 511–13, 110 S.Ct. at 2087–89. Corbin, of course, did not bring it up. *Id.* at 512, 110 S.Ct. at 2088. Thereafter, when the state wanted to prosecute him for manslaughter and homicide arising out of this same accident Corbin claimed that his prior prosecutions on the traffic violations represented a double jeopardy bar. *Id.* at 514, 110 S.Ct. at 2089. The Supreme Court agreed, saying the second prosecution rested on evidence of the same "conduct" and was therefore barred. *Id.* at 523, 110 S.Ct. at 2094. Crossing the median and drunken driving are not lesser included offenses of manslaughter, so the Court must be looking to the evidence. Nevertheless, *Grady* eschews both a "same evidence" test and a "single transaction" test. *Id.* at 521 n. 12 & 523–24 n. 15, 110 S.Ct. at 2093 n. 12 & 2094 n. 15.

The language of the *Grady* opinion suggests that the Supreme Court may have been motivated by the same factor which motivated the court in this case when it held that the government's failure to consolidate the cases against Maza was a failure of "due diligence" that barred further prosecution. *See Grady*, at 524, 110 S.Ct. at 2095 ("With adequate preparation and foresight, the State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding the double jeopardy question.").

2094 n. 15.[19] In fact, our precedent reveals such an exception. *See, e.g., United States v. Benefield*, 874 F.2d 1503 (11th Cir.1989) ("[T]o support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense."); *United States v. Loyd*, 743 F.2d 1555, 1563 (11th Cir.1984) (government must show evidence that indictments charge separate crimes); *United States v. Stricklin*, 591 F.2d 1112, 1118–19 (5th Cir.1979)[20] (holding that § 846 is a lesser included offense of § 848 but that a second prosecution will not be barred where there is evidence of a separate conspiracy).

### Determining the Existence of a Separate Conspiracy

■ In this case, the separate crimes charged against Maza are separate conspiracies. Although at times evidence of a separate conspiracy is analyzed under the due diligence exception, *see, e.g., Stricklin*, 591 F.2d at 1123,[21] it is actually a matter of the meaning of the words "same offence" in the Double Jeopardy Clause in the context of successive prosecutions. This Circuit has adopted a test for distinguishing the existence of a "separate" conspiracy and hence a separate offense. In *United States v. Marable*, 578 F.2d 151 (5th Cir. 1978) the court described the elements relevant to determining the existence of a separate conspiracy.

> Our examination of the record focuses upon these elements: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) place where the events alleged as a part of the conspiracy took place.

*Id.* at 154.[22] The government has the burden of proving a separate conspiracy under these elements and the standard is a preponderance of the evidence. *Loyd*, 743 F.2d at 1563.

■ Applying these elements to the government's proffer of evidence demonstrates that the CCE violation charged is

---

**19.** In his dissent in *Grady* Justice Scalia suggests that a "same transaction" test "at least has the merit of being rational and easy to apply ..." compared to the "same conduct" test articulated in the majority opinion. *Grady*, 495 U.S. at 543, 110 S.Ct. at 2104 (Scalia, J. dissenting). It may be that it appeared easy to apply only because the Court was not called upon to do so. Much of Justice Scalia's discussion as to the difficulties in applying *Grady* seem to apply fairly to any attempt to define what constitutes the "same transaction." *See* Comment, *supra*, at 276 ("The principal shortcoming of this approach is that any sequence of conduct can be defined as an 'act' or a 'transaction.' "). Nevertheless, we agree with Justice Scalia that some notion of the importance of a "single transaction" animated the Court in *Grady*.

**20.** The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**21.** Sometimes, the question of the evidence of a separate conspiracy is discussed as if it were relevant to the due diligence exception, although this tends to confuse the issues. For example, in *Boldin* we quoted the language in *Stricklin* that the government need only have "evidence of a *separate* conspiracy" in order for a subsequent prosecution under the CCE to survive double jeopardy analysis. *Boldin* 772 F.2d at 731 (*citing Stricklin*, 591 F.2d at 1124) (emphasis added). However, in the same paragraph we said that the government must prove a "newly-discovered conspiracy" to survive double jeopardy in these circumstances, *id.*, suggesting that a separate conspiracy must also satisfy the due diligence standard and be "newly discovered." To the extent this created confusion we now clarify that the government may satisfy its burden either way, but that a separate conspiracy need not be newly discovered, although it must rest on distinct evidence from the first conspiracy charged.

**22.** *Marable* was limited by *United States v. Rodriguez*, 612 F.2d 906 (5th Cir.1980) (*en banc*), aff'd sub nom *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In *Rodriguez*, the Fifth Circuit held that the *Blockburger* test required the court to "focus on the elements of the offense charged, not on [the] evidence adduced at trial." *Id.* at 919. This ruling, however, was expressly limited to the context of cumulative punishment as *Rodriguez* dealt with that issue. Throughout the opinion, the *Rodriguez* court is careful to distinguish the problem represented by successive prosecutions. *Id.* at 919–25.

distinct in scope, in facts and in objectives from the conspiracy with which Maza was previously charged. Although there is some overlap in the time charged and the places where the offenses were committed, and there is one co-defendant in common in the two prosecutions, there are many distinct elements. First, this indictment charges Maza with a conspiracy to import, while in the prior indictment he pled guilty to a conspiracy to possess with intent to distribute.[23] More importantly, the government has evidence that Maza committed many discrete overt acts for which he was not put in jeopardy in the first proceeding. The scope and nature of these alleged acts is much larger than encompassed by the first case.

Specifically, at the evidentiary hearing the government summarized for the court the information it had received from the cooperating defendant Jones. R2–634–11–15. Undoubtedly, some of this evidence, (i.e. the amount of cocaine seized from Maza's home, Maza's confession, etc.), was offered in and supported Maza's earlier indictment.[24] Nevertheless, much of it was not necessary to that prosecution. For example, Jones told investigators that "the painter" (later identified as Maza) was a part of the larger conspiracy in the Middle District and that "*all* the cocaine that was imported by [this group]" was taken to his house. R2–11 (emphasis added). Jones also placed Maza at meetings and named others he said had implicated Maza in the larger conspiracy. Finally, the government indicated that it had testimony from other defendants in this case that Maza was personally involved with off-loading cocaine shipments. *Id.* at 13.

Maza suggests that he is being successively prosecuted, under different statutes, for the same act.[25] In fact, the crime with which Maza is now charged relies on separate alleged acts and those acts reveal a separate crime than the one with which he was previously charged. By no stretch was Maza "put in jeopardy" in his first prosecution for the additional acts which support the CCE prosecution here. Although, it undoubtedly subjects a defendant to continuing anxiety, expense and distress to be tried for many crimes, there is no Double Jeopardy bar to prosecuting him for all of the crimes he commits.

Having noted the difference between trying a defendant twice for the same act and trying him twice because he has committed two crimes, there is some merit to the argument that the government should charge a defendant in one proceeding with all of the offenses it believes he has committed.[26] As this case demonstrates, some of the protected double jeopardy interests,

---

**23.** It is well settled that a conspiracy to import and a conspiracy to possess with intent to distribute are "separate conspiracies" for purposes of double jeopardy. *See, e.g., Stricklin,* 591 F.2d at 1122. It is not so clear whether they need to be based on separate evidence to be "separate" for purposes of double jeopardy. Evidence of the existence of a separate conspiracy is not the same as merely charging the defendant under a separate conspiracy statute, but that is not the problem posed in this case. Here there is abundant evidence of a separate conspiracy; the only question is whether that evidence must be "newly discovered" in order to satisfy the exception to the lesser included offense doctrine.

**24.** Because Maza pled guilty, it is impossible to determine what evidence would have been offered by the government in Maza's first prosecution had it gone to trial. By the same token, this obviates any concern that the government has had an opportunity to "rehearse" its evidence in the first trial.

**25.** If the government here was trying to bootstrap a violation of the conspiracy to import law

onto no more evidence than Maza's confessed agreement to store cocaine in his garage, we would have, squarely presented, the sort of "same conduct" case presented in *Grady.* Moreover, an attempt to base a second prosecution solely on a new legal theory of liability, without reference to any separate, if not new, evidence, would more obviously challenge much of the current understanding of the protection afforded by the Double Jeopardy Clause.

**26.** We may have inadvertently encouraged this argument in *Boldin* and subsequent cases to the extent that we have occasionally considered it when raised by a defendant. *See Boldin,* 772 F.2d at 732. *See also United States v. LeQuire,* 943 F.2d 1554, 1560 (11th Cir.1991) (discussing this argument as a question of due process); *United States v. Binker,* 799 F.2d 695, 696 n. 3 (11th Cir.1986) (*per curiam* ) (considering *arguendo* this was a valid defense), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987).

in particular finality, are implicated whenever the government elects to split up prosecutions. *See Rodriguez*, 612 F.2d at 921 (stating that the "basic interests protected [by double jeopardy] are those of repose and finality"). For example, although the government had no opportunity here to "rehearse" its presentation of the evidence because Maza pled guilty, the government did object to the two-level reduction to his sentence, raising the possibility that dissatisfaction with the sentence is the reason for this second prosecution. In addition, the government may be seeking to obtain Maza's testimony against "bigger fish" by threatening him with this second prosecution. Certainly, he is subjected to additional expense and concern by this indictment.

On the other hand, a rule requiring consolidation of all cases against a defendant, where the cases are pending in different districts, perhaps even different states, poses many difficulties. Furthermore, this situation is often attributable to the fact that the defendant has engaged in widespread, continuous and recurring violations of the law in many jurisdictions. "The government," as an entity, is made up of individuals conducting separate investigations that in many instances overlap. Sharing information from these investigations is often essential to the apprehension of persons who engage in such widespread and continuing criminal conduct. Adopting a rule that required consolidation of every charge against a defendant pending in every district whenever such information was shared would discourage such sharing.

Moreover, outside of the difficult context of inchoate offenses, the rule we follow today does not seem particularly troublesome. For example, double jeopardy has not been held to bar successive trials of an accused serial killer when his victims are found in many jurisdictions. These are simply "different crimes," notwithstanding that they may all be prosecuted as "murder." We think this case is no different. Maza is accused of committing separate criminal acts under separate criminal statutes, and he does not argue that the charges are made in bad faith. Were he to do so, and the evidence supported his claim,

we might come to a different conclusion, but on a different legal basis. Furthermore, where the government shows no separate facts on which to base its new prosecution, we might view with a jaundiced eye an attempt to re-try old facts on a new theory. Since that is not the case here, we hold that Count Four should be reinstated.

## III. CONCLUSION

For the foregoing reasons we vacate the District Court's order dismissing Count Four. Count Four is reinstated and the matter is remanded.

VACATED, REVERSED AND REMANDED.