UNITED STATES, Appellee

v.

Larry A. RAYMER, Technical Sergeant
U.S. Air Force, Appellant.

No. 94–0346.
CMR No. 29791.

U.S. Court of Appeals for
the Armed Forces.

Argued March 7, 1995.

Decided Sept. 14, 1995.

For Appellant: *Captain Jeffrey B. Miller*
(argued); *Colonel Jay L. Cohen* (on brief);
*Lieutenant Colonel Frank J. Spinner* and
*Major George F. May.*

For Appellee: *Major John H. Kongable*
(argued); *Colonel Jeffery T. Infelise* and
*Colonel Thomas E. Schlegel* (on brief).

*Opinion of the Court*

COX, Judge:

1. Pursuant to his pleas, appellant was
convicted of uttering bad checks and dishon-
orably failing to pay a just debt (2 specifica-
tions each), in violation of Article 134, Uni-
form Code of Military Justice, 10 USC § 934.
The military judge sentenced appellant to a
bad-conduct discharge, confinement for 12
months, and reduction to the lowest enlisted
grade. The convening authority approved
only so much of the sentence as provides for
a bad-conduct discharge, confinement for 7
months, and reduction to the lowest enlisted
grade. The Court of Military Review [1] af-
firmed the findings and the approved sen-
tence in an unpublished opinion dated No-
vember 30, 1993. 1993 WL 501929.

---

1. *See* 41 MJ 213, 229 n. * (1994).

This Court granted review of the following issue:

WHETHER APPELLANT WAS PREJUDICED BY THE UNREASONABLE MULTIPLICATION OF CHARGES AS TO THE TWO SPECIFICATIONS OF THE ADDITIONAL CHARGE.

I

2. Appellant had a VISA credit card issued through the Mather Federal Credit Union with a credit limit of $4,300.00. On September 14, 1990, appellant reached and exceeded his limit with an outstanding balance of $4,301.05. Finance charges and interest began accruing on September 14, 1990. Between December 11, 1990, and February 21, 1991, the Credit Union made four attempts to phone appellant and sent four Western Union Mailgrams. Two of the mailgrams warned appellant that if the debt was not paid by January 25, 1991, or if appellant did not contact the Credit Union immediately, "the total debt would become due and payable." Between February 26, 1991, and March 17, 1991, the Credit Union contacted the Air Force Office of Special Investigations (AFOSI) and gave appellant one additional month to satisfy the debt. On April 17, 1991, "$5.16 was transferred from the accused's savings account to the VISA account, and the entire debt became due and payable."

3. The relevant specifications against appellant read as follows:

SPECIFICATION 1: In that [appellant], being indebted to Mather Federal Union in the sum of about $4,301.05 for charges to VISA credit card account number 450342, which amount became **due and payable on or about 14 September 1990**, did, at or near Izmir, Turkey, **from 17 April 1991, to 13 November 1991,** dishonorably fail to pay said debt.

SPECIFICATION 2: In that [appellant], being indebted to Mather Federal Credit Union in the sum of about $753.42 for interest and finance charges accrued from 14 September 1990 through 13 November 1991 on VISA credit card account number 450342, which amount became **due and payable on or about 13 November 1991,** did, at or near Izmir, Turkey, from 13

November 1991, to 18 November 1991, dishonorably fail to pay said debt.

(Emphasis added.)

4. As to the first specification, the date September 14, 1990, was chosen as the due and payable date because that was when appellant's account reached its maximum and first became due; and April 17, 1991, was chosen as the starting date for when appellant first dishonorably failed to pay the debt because the Credit Union extended payment of the total debt until this date.

5. For the second specification, November 13, 1991, was chosen as the due and payable date for finance and interest charges. The following colloquy during trial offers an explanation for this choice:

MJ: All right. How about in specification 2? There you're charged with not paying the interest and the finance charges accrued from 14 September 90 to 13 November 91. The specification alleges again that that amount became due and payable on or about the 13th of November. *What's the 13th November—what's the significance of that particular date?*

(The accused and his counsel conferred.)

DC: Your Honor, I believe it was *just a cut off date that was used in charging the offense.*

MJ: What's the Government's theory?

TC: Your Honor, the amount of interest charged did not become due until that date. It was accruing all along and that's when the Government *opted to cut off the amount of interest,* although it's [sic] still accrues. That was the cutoff date for the amount charged.

MJ: All right.

TC: Just by finding the time in the accrual period, stopping, and going forward.

MJ: All right. Do you see that, Sergeant Raymer? The Government's theory here in charging you, *they picked a particular date and they said—okay, we're going to charge you up to that particular date.*

ACC: Yes, Your Honor.

(Emphasis added.)

## II

■ 6. We find the Government's election of November 13, 1991, as a cutoff date for the Additional Charge to be meaningless regarding the debt of appellant to the Credit Union. Appellant owed one debt to one creditor, the principal, which became due on September 14, 1990, and interest and finance charges, which became due on a continuing and accruing basis from September 14, 1990.[2] Simply because the Government elects a date by which to determine the total amount of interest and finance charges owed up to that point does not mean that that is the final due and payable date. The facts of this case are clear that the Credit Union gave appellant until April 17, 1991, to pay the entire debt. The term "entire debt" suggests that on that date $4,301.65 plus interest and finance charges up to that date were due. *See generally* 26 C.J.S. Debt, Action of § 10(2). What was due on November 13, 1991, was indeed the principal, plus $753.42 in interest and finance charges, but this constitutes one continuously increasing debt.

7. We will therefore consolidate specifications 1 and 2 of the Additional Charge into one specification in the decretal paragraph.

■ 8. When reviewing the maximum sentence with appellant, the military judge discussed multiplicity, and all parties agreed that the two specifications of the Additional Charge were multiplicious for sentencing. The two 6–month offenses were merged into one 6–month offense. Thus, while we hold that there was only one offense, we are satisfied that appellant was not prejudiced as to sentence by the military judge's failure to consolidate specification 1 and 2 of the Additional Charge prior to findings.

## DECISION

Specifications 1 and 2 of the Additional Charge are consolidated into one specification as follows:

In that TECHNICAL SERGEANT LARRY A. RAYMER, United States Air Force, 7241st Air Base Group, being indebted to Mather Federal Credit Union for charges, along with interest and finance charges to VISA account number 450342, in the sum of $5,055.07 which became due and payable on 13 November 1991, did, at or near Izmir, Turkey, from 13 to 18 November 1991, dishonorably fail to pay said debt when due in accordance with the terms of his credit card agreement.

The decision of the United States Air Force Court of Military Review as to the Charge and its specifications, the Additional Charge and its consolidated specification, and the sentence is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

---

2. Paragraph 71b, Part IV, Manual for Courts–Martial, United States, 1984, states:

**71. Article 134 (Debt, dishonorably failing to pay)**

\* \* \*

(b) Elements.

(1) That the accused was *indebted* to a certain person or entity in a certain sum;

(2) That *this debt* became due and payable on or about a certain date;

(3) That while the *debt* was still due and payable the accused dishonorably failed to pay this *debt*; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

(Emphasis added.)