UNITED STATES, Appellant,

v.

Richard A. NEBLOCK, Jr., Airman First Class, U.S. Air Force, Appellee.

No. 94–5010.
CMR No. 30419.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 5, 1995.

Decided Sept. 30, 1996.

For the Accused: *Captain Richard D. Desmond* (argued); *Colonel Jay L. Cohen and Captain Robert E. Watson* (on brief).

For the United States: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise and Captain Jane L. Harless* (on brief); *Lieutenant Colonel Michael J. Breslin.*

*Opinion*

SULLIVAN, Judge:

On November 10, 1992, Airman Neblock was tried [1] by a general court-martial at Edwards Air Force Base, California, on one specification each of committing indecent acts and of committing indecent liberties (both with the same female under 16), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. In accordance with the pleas, the military judge found him guilty of these offenses with exceptions and substitutions as to the dates of both offenses. (Both specifications now state "on divers occasions between on or about March 1, 1992, and on or about May 31, 1992.") He then sentenced Airman Neblock to a bad-conduct discharge, confinement and forfeiture of $250.00 pay per month for 48 months, and reduction to E–1. The convening authority approved this sentence on February 5, 1993.

The Court of Military Review [2] on July 21, 1994, modified the findings of guilty in this case. It consolidated the indecent-acts specification and the indecent-liberties specification into one joint specification of committing indecent acts and liberties. It also reassessed the sentence, reducing confinement from 48 months to 42 months, but otherwise affirmed the approved punishments. 40 MJ 747, 751–52.

On September 6, 1994, the Judge Advocate General of the Air Force forwarded this case to our Court for review of the following issues:

I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT CONCLUDED THAT INDECENT LIBERTIES AND INDECENT ACTS WITH A CHILD STATE THE SAME OFFENSE.

II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT HELD THAT ALL OF [THE ACCUSED'S] ACTS ALLEGED IN SPECIFICATION 1 AND ALL OF [THE ACCUSED'S] ACTS ALLEGED IN SPECIFICATION 2 CONSTITUTED A SINGLE COURSE OF CONDUCT FOR WHICH HE COULD ONLY BE PUNISHED ONCE.

We hold that the above-noted offenses are alternative ways of committing the same military offense of "committing indecent acts *or* taking indecent liberties with a child." *See United States v. Brown*, 3 USCMA 454, 13 CMR 10 (1953). We further hold that this military offense is not a continuous offense as a matter of law so as to permit consolidation of the factually discrete specifications ordered by the appellate court below. *See United States v. Johnson*, 38 MJ 88 (CMA 1993); *see generally Sanabria v. United States*, 437 U.S. 54, 74 n. 33, 98 S.Ct. 2170, 2184 n. 33, 57 L.Ed.2d 43 (1978).

Airman Neblock was found guilty of the following offenses:

SPECIFICATION 1: In that AIRMAN FIRST CLASS RICHARD A. NEBLOCK, JR., ... did, at or near California City, California, on divers occasions between on or about 1 March 1992, and on or about 31 May 1992, commit *indecent acts*

---

1. The authenticated record of trial reflects a recess at 1254 on November 10, 1992 (R. 66), and sentence being imposed on May 10, 1992 (R. 77). Note the findings stated above.

2. *See* 41 MJ 213, 229 n.* (1994).

*upon the body of [JW],* a female under 16 years of age, not the wife of said A1C Neblock, *by touching her private parts and inserting his finger in her vagina, and having her place her hands on his penis,* with intent to gratify the sexual desires of the said A1C Neblock.

SPECIFICATION 2: In that AIRMAN FIRST CLASS RICHARD A. NEBLOCK, JR., ... did, at or near California City, California, on divers occasions between on or about 1 March 1992 and on or about 31 May 1992, *take indecent liberties with [JW],* a female under 16 years of age, not the wife of said A1C Neblock, *by exposing his penis and masturbating in the presence of [JW],* with the intent to gratify the sexual desires of the said A1C Neblock.

(Emphasis added.) Prior to pleading guilty, he moved that one of these specifications be dismissed as multiplicious with the other. However, he requested the judge to defer his ruling on this motion until after the providence inquiry occurred and the stipulation of fact was admitted into evidence.

The stipulation of fact states in pertinent part:

5. On or about 1 May 1992, the Accused took [J] to his bedroom and closed the door and the blinds. The Accused took off his pants and underwear, [J] took off her pants and panties, and they laid on his bed wearing only their shirts. The Accused showed [J] his penis and had [J] touch his penis. The Accused had an erection during this time. Then the Accused inserted his finger into [J]'s vagina and moved his finger around inside of her vagina in a circular motion. [J] said that it "tickled." The Accused told [J] to not tell her mother about what they did.

6. On or about 3 May 1992, the Accused and [J] went into [J]'s bathroom, and they both took off their clothes. [J] touched the Accused's penis, and he had an erection. The Accused then masturbated himself in front of [J] and ejaculated into some toilet paper and showed the semen to [J]. The Accused then touched [J] in the vaginal area and put his finger into her vagina. Again, the Accused told [J] not to tell

anyone what they had done. The Accused told [J] that if he wanted to do this again that [J] should tell him, "No."

7. There was another incident that occurred in [J]'s bedroom. [J] was in the bathroom and came out and pointed at her vaginal area and said that it hurt and asked the Accused to rub some vaseline on it. While the Accused was rubbing the vaseline in her vagina, [J] said it "tickled." The Accused unzipped his pants and showed [J] his penis, and [J] touched his penis and scrotum.

8. If [J] is called to testify, she can recall approximately eight times that the Accused touched her in the vaginal area. The Accused recalls touching [J] in the vaginal area and inserting his finger into her vagina approximately three to five times, however, there could have been more times that he forgot.

9. [J] also recalls several times that she observed the Accused masturbating himself and ejaculating in front of her. The Accused recalls that he masturbated in front of [J] and ejaculated about two to three times. The Accused knows that he did not masturbate every time he touched her in the vaginal area, however, there could have been more instances that he could not remember.

The military judge subsequently denied the defense's multiplicity motion as follows:

MJ: The court will come to order.

For purposes of the motion, I incorporate the stipulation of fact and the accused's responses during the providence inquiry. Based on these two items, I find that there are no incidents of masturbation in [JW]'s presence that was not accompanied by an indecent touching. However, there were at least two occasions when the accused touched [JW] and she touched him as alleged in specification 1, when there was no masturbation.

When reviewing the case law, as i[s] often in the case of multiplicity, you can find almost a case for every proposition. These cases have a tendency to turn on

their facts. After review of the cases provided by the defense, and some cases I reviewed on my own, I concluded that although these offenses are similar, there is a difference of elements and there is a difference of societal norms, such that I find that these are separate offenses for findings. The motion for findings—multiplicity for findings is denied.

Turning to multiplicity for sentencing, I do not find that these offenses were a single transaction, based on the facts introduced. The dates were close, but they were based on separate days.

The single impulse theory is often mentioned in the sentencing analysis. However, I reviewed the case of *U.S. versus Traeder*, T–R–A–E–D–E–R, 32 MJ 457 (CMA 1991). This case seems to indicate that the single impulse theory is no longer in effect. It is certainly no longer the only basis for making a finding on deciding the issue of whether that it is multiplicious for sentencing. Based on the facts of this case, I find that the offenses are separate and [sic] punishable, and it is not an unreasonable multiplication of charges. The motion for multiplicity for sentencing is also denied.

The Court of Military Review concluded that the military judge erred in denying the defense motion. It therefore consolidated the two specifications in question into one specification that read as follows:

In that AIRMAN FIRST CLASS RICHARD A. NEBLOCK, JR., United States Air Force, 31 Test and Evaluation Squadron, did, at or near California City, California, on divers occasions between on or about 1 March 1992 and on or about 31 May 1992, commit indecent acts upon [JW], a female under 16 years of age, not the wife of the said A1C Neblock, by touching her private parts and inserting his finger into her vagina, and by having her place her hands on his penis, and take indecent liberties with [JW] by exposing his penis and masturbating in the presence of [JW], all with the intent to gratify the sexual desires of the said A1C Neblock. 40 MJ at 751–52.

— — —

The certified issues in this case basically ask whether Airman Neblock's court-martial improperly convicted him twice for "the same offense." The military judge found him guilty of one specification of committing *indecent acts with a minor* "on divers occasions" over a 90–day period in 1992 and one specification of taking *indecent liberties with the same minor* "on divers occasions" over the same 90–day period. Each specification alleges different acts by the accused. The former alleges sexual touchings of the victim; the latter alleges sexual acts in the presence of the victim. Finally, the military judge found that the sexual touchings occurred on four occasions while the other sexual misconduct occurred on two of these occasions before or after the sexual touchings of the victim. 40 MJ at 758.

The Court of Military Review consolidated the two specifications noted above because it concluded that they "violate[d] the prohibition against double punishment." 40 MJ at 748. It held that these specifications were the "same offense" under the decision of this Court in *United States v. Teters*, 37 MJ 370 (1993), and that, therefore, only one conviction was allowed. In the alternative, it held that these offenses were the same under pre-*Teters* case law (*see United States v. Haas*, 22 CMR 868, 877 (AFBR 1956)), and that setting aside one conviction was authorized under the duplicitous-pleading rule of *United States v. Maynazarian*, 12 USCMA 484, 31 CMR 70 (1961). The import of its holding was that the military judge exceeded his legal authority in finding Airman Neblock guilty of two specifications instead of one.

The Double Jeopardy Clause of the Fifth Amendment provides, "nor shall any person be subject *for the same offense* to be twice put in jeopardy of life or limb." (Emphasis added.) Article 44(a), UCMJ, 10 USC § 844(a), similarly states: "No person may, without his consent, be tried a second time *for the same offense.*" (Emphasis added.)

These provisions of law have been construed, *inter alia*, to prohibit a person from being *twice punished at a single trial for the same offense*, contrary to the will of Congress.[3] *See Albernaz v. United States*, 450 U.S. 333, 343–44, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275 (1981); *United States v. Crawford*, 52 F.3d 1303, 1306–07 (5th Cir.1995); *United States v. Centeno–Torres*, 50 F.3d 84, 85 (1st Cir.1995); *United States v. Martinez*, 49 F.3d 1398, 1402 (9th Cir.1995). Finally, it has been held that *two convictions* or findings of guilty *for the same offense at a single trial* are double punishment and a violation of the above legal authorities, *again*, unless authorized by Congress. *Rutledge v. United States*, —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *United States v. Teters, supra; United States v. Baker*, 14 MJ 361, 367 (CMA 1983).

In this light, the particular question before us is whether Congress intended Airman Neblock's two convictions to be "the same offense" for double-jeopardy purposes. We note that he was found guilty in specification 1 of committing indecent acts with a female under 16 and in specification 2 of committing indecent liberties with that same female under 16 years of age, both offenses being charged under Article 134. *See Rutledge v. United States, supra* (pleading considered to determine statute violated; statute reviewed to determine elements of charged offense).[4] The opinion of this Court in *United States v. Brown*, 3 USCMA 454, 13 CMR 10 (1953), makes quite clear that the Manual explanations of these Article 134 offenses (*see* para. 87, Part IV, Manual for Courts–Martial, United States, 1984) were based on a (now-repealed) provision of District of Columbia law (*see* Title 22, District of Columbia Code § 3501 (1948)). More importantly, we have also recognized that indecent acts and indecent liberties were alternative ways of violating D.C.Code § 3501 and should similarly be considered alternative ways of violating Article 134 and paragraph 87 of Part IV of the Manual.[5] *See United States v. Brown*, 3 USCMA at 456–57, 13 CMR at 12–13; *United States v. Heard*, 420 F.2d 628, 630–31 (D.C.Cir.1969); *see generally* Kirchheimer, *The Act, The Offense and Double Jeopardy* [hereafter Kirchheimer], 58 Yale L.J. 513, 516–17 (1949) (explains concept of alternativity in a criminal statute). Accordingly, we initially conclude that committing indecent acts with a child and taking indecent liberties with that child are violations of the same provision of military law.[6]

---

**3.** According to *United States v. Moore*, 43 F.3d 568, 571 (11th Cir.1995): "The protection against cumulative punishments serves two purposes: it ensures that the sentencing discretion of courts is confined to the limits established by the legislature, and preserves the exclusive power of the legislature to prescribe crimes and determine punishments." *See generally* Notes and Comments, *Twice in Jeopardy*, 75 Yale L.J. 262, 299–313 (1965).

**4.** In response to Judge Crawford's separate opinion, I would note that the Supreme Court is the final arbiter of constitutional and federal statutory questions as well as the meaning of its own decisions. *See generally 44 Liquormart, Inc. v. Rhode Island*, —— U.S. ——, ——, 116 S.Ct. 1495, 1511, 134 L.Ed.2d 711 (1996). It does not apply a "pleadings elements" approach. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). *See United States v. Terry*, 86 F.3d 353, 355–56 (4th Cir.1996) (citing statutory-elements tests in *Rutledge v. United States*, —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). *See generally* Barto, *Developments in the Substantive Criminal Law Under The Uniform Code of Military Justice*, The Army Lawyer 5, 21–23 (March 1996) (criticizing plurality "pleaded elements" test as "simply unconvincing").

**5.** Therefore, we reject Airman Neblock's argument that "committing indecent acts or taking indecent liberties with a child" is a merger-type offense permitting a single conviction. *See Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); Kirchheimer, *The Act, The Offense and Double Jeopardy*, 58 Yale L.J. 513, 518–22 (1949).

**6.** Assuming Congress intended committing indecent acts with a child and taking indecent liberties with a child to be treated as violations of different statutes, "the *Blockburger Rule*" would be applied to determine congressional intent as to multiple convictions *if* both specifications are based on the same act or transaction. *See generally Rutledge*, —— U.S. at ——, 116 S.Ct. at 1245. However, as noted later in this opinion, the acts alleged in the challenged specifications, although related, are discrete as a matter of fact and law;

Of course, simply because two offenses violate the same statute or law does not make them the same offense as a matter of fact, as also required by the Double Jeopardy Clause. *See generally Ex Parte Lange,* 18 Wall. (85 U.S.) 163, 170, 21 L.Ed. 872 (1874) (Double Jeopardy Clause protects against second punishment "on same facts; for same statutory offense"). In specification 1, Airman Neblock was charged with "touching her private parts and inserting his finger in her vagina, and having her place her hands on his penis," acts of physical conduct with the victim. In specification 2 he was charged "with exposing his penis and masturbating in [her] presence," acts not involving physical touching of the victim but done in her presence. Admittedly, the time of offense delineated in both specifications now states "on divers occasions between on or about 1 March 1992, and on or about 31 May 1992." However, the actual time of each group of acts was established by the military judge as occurring on different dates during the same period or, if on the same date, one after the other. Accordingly, each violation of the same law, alleged and proven in this case, was *for different acts at different times.* *United States v. Maza,* 983 F.2d 1004, 1011–13 (11th Cir.1993); *United States v. Vance,* 724 F.2d 517 (6th Cir.1983).

In this context, an additional question of congressional intent arises to that considered in *Ball,* 470 U.S. at 857, 105 S.Ct. at 1669, and *United States v. Teters,* 37 MJ at 376 (same act or conduct conceded or assumed). It is whether Congress intended multiple convictions of the same legal offense for the same or similar acts committed on different occasions. *See United States v. Kimbrough,* 69 F.3d 723, 729 n. 5 (5th Cir.1995); *United States v. Christner,* 66 F.3d 922, 928 n. 7 (8th Cir.1995); *United States v. Shaid,* 730 F.2d 225, 231 (5th Cir.1984).

Long ago, in *Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), the Supreme Court addressed this type of question as follows:

This case raises the question whether one who, in the same transaction, tears or cuts successively mail bags of the United States used in conveyance of the mails, with intent to rob or steal any such mail, is guilty of a single offense or of additional offenses because of each successive cutting with the criminal intent charged. If the successive cuttings into the different bags constitute different offenses, then the court below was right in refusing the writ of *habeas corpus.* If but a single offense was committed, notwithstanding separate mail bags were successively cut with the felonious intent named in the statute, then the appellant was entitled to the writ, and should have been discharged by order of the court upon the proceedings below.

Section 189, under which this indictment was prosecuted, provides:

"Whoever shall tear, cut, or otherwise injure any mail bag, pouch, or other thing used or designed for use in the conveyance of the mail, or shall draw or break any staple or loosen any part of any lock, chain, or strap attached thereto, with intent to rob or steal any such mail, or to render the same insecure, shall be fined not more than five hundred dollars, or imprisoned not more than three years, or both."

*Reading the statute with a view to ascertaining its meaning, it is apparent that it undertakes to make an offender of anyone who shall cut, tear, or otherwise injure any mail bag, or who shall draw or break any staple or loosen any part of any lock, chain or strap attached thereto, with the felonious intent denounced by the statute. These words plainly indicate that it was the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation. Whenever any one mail bag is thus torn, cut, or injured, the offense is complete. Although the transaction of cutting the mail bags was in a sense continuous, the complete statu-*

accordingly, the *Blockburger Rule* to determine legislative intent is still not applicable in this case. *See generally United States v. Kimbrough,* 69 F.3d 723, 729 n. 5 (5th Cir.1995); *United*

States v. Christner,* 66 F.3d 922, 928 n. 7 (8th Cir.1995); *United States v. Maza,* 983 F.2d 1004, 1011–13 (11th Cir.1993).

tory offense was committed every time a mail bag was cut in the manner described, with the intent charged. The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag. The words are so plain as to require little discussion or further amplification to ascertain their meaning. The separate counts each charged by its distinctive number the separate bag and each time one of them was cut there was, as we have said, a separate offense committed against the statute. Congress evidently intended to protect the mail in each sack, and to make an attack thereon in the manner described a distinct and separate offense.

237 U.S. at 628–29, 35 S.Ct. at 711 (emphasis added).

Accordingly, in Airman Neblock's case, it must also be decided whether Congress intended that the military offense of "committing indecent acts or liberties with a child" be punished under Article 134 and paragraph 87 of Part IV of the Manual as a continuous-course-of-conduct offense or as an individual-act offense. *See Baker,* 14 MJ at 367 n. 4; *see generally* Westen and Drubel, *Toward a General Theory of Double Jeopardy,* 1978 The Supreme Court Review 81, 111–22 (1979) (unit-of-prosecution cases); *Kirchheimer, supra* at 539–41; *United States v. Anderson,* 59 F.3d 1323, 1332 (D.C.Cir.1995). If it is a continuous-course-of-conduct offense as a matter of law, a separate conviction for each alternative method of commission or component of this offense during the course of conduct might not be authorized. *See United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); *In re Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887); *see also In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889); *see generally* § 1.07(1)(e), ALI Model Penal Code, reprinted in ALI *Model Penal Code and Commentaries* (Part I) 101 (1985). If it is a distinct or discrete-act offense, separate convictions are allowed in accordance with the number of discrete acts. *See*

United States v. Gardner, 65 F.3d 82, 85 (8th Cir.1995); *State v. Kersey,* 120 N.M. 517, 903 P.2d 828, 833 (1995); *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223, 1233–34 (1991); *see also Sanabria v. United States,* 437 U.S. 54, 74 n. 33, 98 S.Ct. 2170, 2184 n. 33, 57 L.Ed.2d 43 (1978).

The Supreme Court, as indicated above, has focused on statutory language to resolve whether Congress intended a crime to be continuous as a matter of law. *See Ebeling v. Morgan, supra;* Notes and Comments, *Twice in Jeopardy,* 75 Yale L.J. 262, 313 (1965). *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), provided, *inter alia,* another example of the type of legal analysis required for resolving this particular question. (This method of statutory analysis is different from the so-called *"Blockburger* Rule"[7] announced later in that same case, 284 U.S. at 304, 52 S.Ct. at 182, which determines congressional intent as to multiple convictions where two statutes are violated by one act.) *See United States v. Teters, supra.*

According to Justice Sutherland in *Blockburger:*

The contention on behalf of petitioner is that these two sales, having been made to the same purchaser and following each other with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute a single continuing offense. The contention is unsound. The distinction between the transactions here involved and an offense continuous in its character, is well settled, as was pointed out by this Court in the case of *In re Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 [ (1887) ]. There it was held that the offense of cohabiting with more than one woman, created by the Act of March 22, 1882, c. 47, 22 Stat. 31 [ (now 18 USC § 514) ] was a continuous offense, and was committed, in the sense of the statute, where there was a living or dwelling together as husband and wife. The

---

7. The opinions below cite the unofficial version of this rule. 40 MJ at 749 and 756. The official

version (284 U.S. at 304) is different from the version in 52 S.Ct. at 182, and 76 L.Ed. at 309.

court said (pages 281, 286 [of 120 U.S., 7 S.Ct. of 556, 559]):

"It is, inherently, a continuous offence, having duration; and not an offense consisting of an isolated act.

\*     \*     \*

"A distinction is laid down in adjudged cases and in textwriters between an offence continuous in its character, like the one at bar, and a case where the statute is aimed at an offence that can be committed *uno ictu.*"

*The Narcotic Act does not · create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. Each of several successive sales constitutes a distinct offense, however closely they may follow each other.* The distinction stated by Mr. Wharton is that "when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." Wharton's Criminal Law, 11th Ed., § 34. Or, as stated in note 3 to that section, "*The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately....* If the latter, there can be but one penalty."

284 U.S. at 301–02, 52 S.Ct. at 181 (emphasis added).

■ In this light, we have again examined our decision in United States v. Brown, *supra,* and paragraph 87 of Part IV of the Manual as to the military offense of "indecent acts or liberties with a child." *See* United States v. Schoolfield, 40 MJ 132, 137 (CMA 1994). The Manual provision prohibits "acts" or "liberties," plural terms suggesting more than an individual act or liberty was intended to be punished. However, our case law construing these terms in the context of other language in the Manual provision and the history of its component offenses suggest a more limited definition. *See* Kirchheimer, *supra* at 539–41. Those cases clearly hold that this offense is established by an act or

liberty which is independently indecent, or acts or liberties which must be joined together to constitute the required indecency. *See* United States v. Scott, 21 MJ 345, 348–49 (CMA 1986); United States v. Knowles, 15 USCMA 404, 405, 35 CMR 376, 377 (1965) (a depraved act); United States v. Hobbs, 7 USCMA 693, 700, 23 CMR 157, 164 (1957); *see generally* W. Winthrop, *Military Law and Precedents* 143 (2d ed. 1920 Reprint) (acts which "substantially complete a single occasion of offense").

■ We are not persuaded by Airman Neblock that this offense is so continuous as a matter of law as to include all indecent acts or liberties with a single victim, without regard to their character, their interrupted nature, or the different times of their occurrence. *Cf.* United States v. Universal C.I.T. Credit Corp. and In re Snow, both *supra; see also* In re Nielsen, *supra.* No legal authority, military or civilian, is proffered for such an extended approach to the crime of "committing indecent acts or taking indecent liberties." Moreover, it is contrary to precedent in other jurisdictions concerning this type of offense or similar sexual offenses. *See* State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 181 (1990) (indecent liberties); *see also* State v. Kruzycki, 192 Wis.2d 509, 531 N.W.2d 429, 435 (App.1995) (vaginal assaults); State v. Snook, 210 Conn. 244, 555 A.2d 390, 399 (1989) (acts injurious to moral or physical well being of minor); State v. Kulmac, 230 Conn. 43, 644 A.2d 887 (1994) (each act of sexual assault); State v. Bernard, 849 S.W.2d 10, 20 (Mo. banc. 1993) (sexual abuse defined as any sexual contact); People v. Bowen, 241 Ill.App.3d 608, 182 Ill.Dec. 43, 60, 609 N.E.2d 346, 363 (4 Dist. 1993) (different acts of penetration constitute separate assaults). People v. Keindl, 68 N.Y.2d 410, 509 N.Y.S.2d 790, 796, 502 N.E.2d 577, 582 (1986) (sodomy and sexual abuse punish the performing of a single act).

■ Accordingly, we conclude that committing "indecent acts or taking liberties with a child" is not a continuous-conduct crime as a matter of military substantive law. We further conclude that Airman Neblock's two convictions of this crime based on discrete

facts were not the same offense for purposes of the Double Jeopardy Clause. *See also Holdren v. Legursky,* 16 F.3d 57, 62 (4th Cir.1994); *Rhoden v. Rowland,* 10 F.3d 1457, 1461–62 (9th Cir.1993); *United States v. Maza, supra.*

The remaining question we must resolve is whether the consolidation ordered by the Court of Military Review is nonetheless required by the decision of this Court in *United States v. Maynazarian,* 12 USCMA 484, 485, 31 CMR 70, 71 (1961). There, this Court recognized that a military accused · could be charged with and found guilty of a single-act offense by alleging and finding a course of the same conduct between two dates. *See United States v. Schumacher,* 2 ·USCMA 134, 7 CMR 10 (1953), and cases cited in *United States v. Holt,* 31 MJ 758, 762 (ACMR 1990), *rev'd on other grounds,* 33 MJ 400 (CMA 1991); *see generally United States v. Means,* 12 USCMA 290, 292–94, 30 CMR 290, 292–94 (1961). However, this Court further concluded that a conviction under such broad pleadings would bar a second conviction at the same trial for a single-act offense within the charged period. *Id.; see also United States v. Collins,* 16 USCMA 167, 170, 36 CMR 323, 326 (1966). The Court of

Military Review held that this ancillary principle of "duplicitous-pleading"[8] should be applied in Airman Neblock's case. 40 MJ at 750. We disagree.

We need not reject the particular pleadings holding of this Court in *United States v. Maynazarian, supra. Cf. United States v. Weymouth,* 43 MJ 329 (1995).[9] Unlike the situation in that case, the present case involves no blanket charge in either specification of "committing indecent acts or taking indecent liberties with a child." *See* para. 87, Part IV, Manual, *supra.* Moreover, the first specification of committing indecent acts alleged distinct acts of touching the victim's person, while the second specification of taking indecent liberties alleged different acts which were done only in her presence. *Cf. United States v. Maynazarian, supra* (general count and included count). Finally, neither specification alleges a continuous (uninterrupted) course of conduct. Each specification states that it occurred "on divers occasions between on or about 1 March 1992 and on or about 31 May 1992."[10] In fact, the military judge particularly found 2 days of indecent acts alone and 2 other days when the indecent acts and indecent liberties occurred successively during this 3–month peri-

8. The difference between a duplicitous and a multiplicious indictment has been well stated by the Sixth Circuit as follows:

A duplicitous indictment is one that charges separate offenses in a single count. The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both. Adverse effects on a defendant may include improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense. *See United States v. Alsobrook,* 620 F.2d 139, 142 (6th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); 1 C. Wright, *Federal Practice & Procedure: Criminal* 2d § 142 (1982); 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2(e) (1984).

A multiplicious indictment charges a single offense in several counts. Its dangers are that the defendant may be given multiple sentences for what Congress considered a single offense,

and that prolix recitation may falsely suggest to a jury that a defendant has committed not one but several crimes. *See* C. Wright, *supra,* § 142 at 475–76 & n. 19.
*United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (1988).

9. Our recognition of the decision of this Court in *United States v. Maynazarian,* 12 USCMA 484, 31 CMR 70 (1961), does not undermine the decision of this Court in *United States v. Teters,* 37 MJ 370 (1993). The former is a duplicity case and the latter is a multiplicity case. The two types of cases or the distinct questions resolved in each · should not be confused. This distinction was noted in *United States v. Duncan,* 850 F.2d 1104 at 1108 n. 4. (*See* n. 8, *supra.*)

10. Use of the phrase "on divers occasions" is not new to military law. *See* RCM 307(c)(3), Discussion, Manual for Courts–Martial, United States, 1984; J. Snedeker, *Military Justice Under the Uniform Code* § 1204c at 230 n. 61 (1953). We agree with Chief Judge Dixon's dissent below, however, that the term "on divers occasions" suggests "two or more," not continuity, 40 MJ at 758–59, and the military judge so found those occasions in this case.

od. For these reasons, we find no "continuous conduct" or "overlapped" pleadings as addressed by the decision of this court in *United States v. Maynazarian, supra,* and, accordingly, no consolidation of these offenses was permitted on that basis. *Contra United States v. Gill,* 37 MJ 501, 510 (AFCMR 1993); *United States v. Holt, supra.*

In sum, the decision of this Court in *United States v. Teters, supra,* did not purport to resolve all multiplicity questions.[11] It addressed only the method of discerning Congress' intent on *multiple convictions under two different statutes* at a single trial where those two statutes were violated *by a single act.* A different question is presented in this case. *See Ball,* 470 U.S. at 859 n. 6, 105 S.Ct. at 1670 n. 6. It asks whether Congress intended *multiple convictions under the same statute or law for different acts* occurring on different days or at different times. *See generally Sanabria v. United States,* 437 U.S. at 74 n. 33, 98 S.Ct. at 2184 n. 33. Accordingly, we conclude that both certified questions in the present case should be answered in the affirmative to this extent: Multiple convictions under Article 134 and paragraph 87 of Part IV of the Manual were authorized when Airman Neblock on different days or successive times on the same day engaged in either indecent acts or indecent liberties with the same female victim. *See United States v. Johnson* and *United States v. Maza,* both *supra.*

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that Court for further review.

Judge GIERKE concurs.

COX, Chief Judge (concurring in part and in the result):

I join Judge Crawford's opinion with these comments.

My greatest concern with Judge Sullivan's expansive opinion is that it continues to add to the confusion surrounding an otherwise simple concept. In reality, multiplicity is simplicity itself. It is not a new or novel concept in military law. Paragraph 76a(8), Manual for Courts–Martial, United States, 1951, provided:

> The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate in this: The offenses are separate if each offense requires proof of an element not required to prove the other.... An accused may not be punished for both a principal offense and for an offense included therein because it would not be necessary in proving the included offense to prove any element not required to prove the principal offense.

Does that language sound familiar? In *United States v. Teters,* 37 MJ 370, 377 (CMA 1993), quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), we said:

> The applicable rule is that, where the *same act or transaction* constitutes a violation of *two distinct statutory provisions,* the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a[*] fact which the other does not.

(Emphasis added).

The multiplicity rule is often called the lesser-included-offense (LIO) rule by some, but should more accurately be called the included-offense rule. It relates directly to Article 79, Uniform Code of Military Justice,

---

**11.** The decisions of this Court in *United States v. Foster,* 40 MJ 140 (1994), and *United States v. Weymouth,* 43 MJ 329 (1995), are also not controlling in the present case. They, like *United States v. Teters, supra,* are concerned with application of the *"Blockburger* Rule" where two of-

fenses are said to have been committed by one act. *See generally Rutledge v. United States,* —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

* *See* 43 MJ 65, 67 n. 2 (1995), and 45 MJ at 197 n. 7.

10 USC § 879. *See United States v. Teters,. supra.* Thereunder, one cannot prove the greater offense without proving the lesser.

One complicating factor in military jurisprudence is that many offenses are not statutory. Thus, *one act or transaction,* although not proscribed in an enumerated statute, may nevertheless be charged as an offense under the general articles, Articles 133 and 134, UCMJ, 10 USC §§ 933 and 934, respectively. Likewise, LIOs of enumerated offenses are often found to exist under the general articles. In *United States v. Foster,* 40 MJ 140 (CMA 1994), and *United States v. Weymouth,* 43 MJ 329 (1995), we sought to reconcile the *Teters* doctrine with the simple fact that many offenses prosecuted under military law do not arise out of statutory violations or provisions but, rather, spring from many years of custom, tradition, and common usage. Numerous varieties of misconduct are set forth as prosecutable offenses in Part IV of the Manual for Courts-Martial, United States (1995 ed.), which lists both the elements of proof and the maximum authorized punishments, as well as the commonly included offenses. But even the Manual does not give us an exhaustive listing of offenses or LIOs, although it will solve almost all of the practitioner's concerns. *See Weymouth,* 43 MJ at 342 (Crawford, J., concurring in the result). Unfortunately, the Manual does not answer all of the questions. Therefore, it is incumbent upon the practitioner to understand the theoretical underpinnings of the rule.

Some misconduct can also be prosecuted under the general articles even if no model specification appears in the Manual. This practice of charging misconduct as a violation of Article 133 or 134 has been recognized as legitimate by the Supreme Court. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

In *United States v. Foster* and *United States v. Weymouth,* both *supra,* we were attempting to establish that, in military jurisprudence, the question of whether *one act or transaction* may constitute two or more separately punishable offenses under the rubric of the general articles does not depend solely upon statutory elements. If that were not true, then we could *never* have separate offenses under Article 133 or 134, because the express statutory elements are very limited to: (1) conduct; and (2) wrongfulness, expressed as either conduct which is service-discrediting, prejudicial to good order and discipline, or unbecoming an officer. The conduct element would always be the same. The place that you can find "a fact" (*see Blockburger v. United States* and *United States v. Teters,* both *supra* ) is in the pleadings.

Using an elements-type test to describe offenses prosecuted under Article 134, we see the following: *One act or transaction* cannot be made the basis for two or more specifications of a charge under Article 134 unless *each specification* requires proof of a fact not required to be proved by the other specification. Contrary to popular belief, each specification must have a different fact; it is not sufficient that only one specification has another fact. In every case, the greater offense has at least one more fact than in the lesser offense. That is what causes LIOs.

Although in my view this is not a multiplicity case, in some ways it affords us a good example of the rules. Let us look first at the conduct as described in the stipulation of fact. The accused entered a bedroom with a child-victim, took off his and her clothes, had the child fondle his penis, and placed his finger into the child's vagina. The accused was believed to have engaged in this conduct numerous times over a 3-month period. He was also believed to have masturbated in her presence on several of the occasions.

The Government elected to charge this "conduct" in two ways, both of which are described in the Manual under Article 134. The physical-touching misconduct is called an "indecent act," para. 87b(1), Part IV, Manual, *supra* (1995 ed.), and the masturbation misconduct is called "indecent liberties," para. 87b(2), Part IV. Interestingly, both are found in paragraph 87, Part IV, and, quite frankly, although an argument can be made that indecent acts require a "touching" and indecent liberties do not, our case law establishes that the difference

between the two offenses borders on the metaphysical. *See United States v. Thomas,* 25 MJ 75 (CMA 1987). Indeed, paragraph 87(d) lists "indecent act with another" as an LIO of "indecent acts or liberties with a child." *See also Thomas, supra* at 76.

As we apply the rule, first and foremost we find that this is not a multiplicity case. Remember, multiplicity applies only to *one act or transaction.* The accused was charged with multiple acts on many occasions. Furthermore, proof of each specification is totally independent. Proof of the indecent-liberties specification does not prove the indecent-acts specification, and *vice versa.*

Even if the offenses arose out of one incident, the rule would still be satisfied. There were two separate and distinct types of acts. The first act was the indecent touching of the child's genital area; the second was the masturbation. The indecent acts offense is an assault-type crime. Indeed, assault is listed in paragraph 87(d) as an LIO. The indecent liberties offense may be committed without proof of an assault. *United States v. Scott,* 21 MJ 345 (CMA 1986). Thus, each specification requires proof of a fact not required by the other.

Of course, if the accused had been charged with taking indecent liberties with the child by touching her genital area with the requisite intent in one specification, and in another specification charged with indecent assault on the child by touching her genital area, and in a third specification charged with committing indecent acts with the child by touching her genital area, one would see a classic undue multiplication of the charges. The same proof is required to prove each of the three Article 134 offenses. Likewise, if there was an additional charge under Article 128 of assault consummated by an offensive touching, this too would be multiplicious because, as we said in *Teters,* no further proof is required.

One last observation. This is a consolidation case. The Government has elected to consolidate *multiple acts and transactions* into two specifications. This obviously is not "unreasonable" (*see United States v. Foster, supra* at 144 n. 4), and it does not represent charging *one act or transaction* as a violation of two separate statutes (*see United States v. Teters, supra* ). Therefore, although in military jurisprudence we cannot ignore the style of the Charges and specifications in our consideration of multiplicity, we also need not ignore reality in order to set aside the decision below.

CRAWFORD, Judge (concurring in the result):

Since *United States v. Teters,* 37 MJ 370 (CMA 1993), we have decided a number of multiplicity cases.[1] It seems to me that from

---

1. *United States v. Oatney,* 45 MJ 185 (1996); *United States v. Carroll,* 43 MJ 487 (1996) (solicitation and conspiracy are separate offenses); *United States v. Weymouth,* 43 MJ 329 (1995) (assault with intent to commit murder by stabbing with a knife, assault with a dangerous weapon, i.e., the knife, and assault intentionally inflicting grievous bodily harm by stabbing are lesser-included offenses of attempted murder by stabbing with a knife); *United States v. Albrecht,* 43 MJ 65 (1995) (making and uttering the same check at the same time and place are not multiplicious for findings); *United States v. Strode,* 43 MJ 29 (1995) (whether age is alleged is important because it makes a difference whether indecent acts are committed with an adult or a child); *United States v. Raymer,* 42 MJ 389 (1995) (consolidated the underlying debt and the interest on the debt in one specification of dishonorable failure to pay a debt); *United States v. Mincey,* 42 MJ 376, 378 (1995) (waiver of duplicitous-pleading issue: each bad check could be charged separately but was not. When not

charged separately, the court will look at the maximum sentence as if there were separate charges.); *United States v. Morrison,* 41 MJ 482 (1995) (Willful-disobedience offenses and missing movement are not multiplicious for findings or sentence.); *United States v. Loving,* 41 MJ 213, 271–72 (1995) (Without considering the impact of *Teters,* the Court held it was permissible for the judge not to dismiss before findings an allegation of premeditated murder and felony murder with respect to two victims. After findings, the judge dismissed one of the premeditated-murder findings so "the court-martial would have the option of considering" the death penalty as to those findings to which there was an unanimous verdict.), *aff'd on other grounds,* — U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); *United States v. Wheeler,* 40 MJ 242 (CMA 1994) (Adultery and indecent acts with the same woman at the same times and places are not multiplicious for findings.); *United States v. Foster,* 40 MJ 140 (CMA 1994) (committing indecent acts held lesser-in-

these cases one can discern certain bright-line rules that apply to findings and sentence. As we said in *United States v. Morrison*, 41 MJ 482, 484 (1995), "The language of RCM 1003(c)(1)(C) [Manual for Courts–Martial, United States, 1984] is thus virtually the same as the 'elements' test in *Blockburger" v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

1. We follow the statutory-elements test: If the elements are different, one can presume, in the absence of clear congressional intent, that the offenses are not multiplicious. *United States v. Teters, supra.*

2. One cannot literally apply the statutory-elements test when examining offenses under Article 133 or 134, Uniform Code of Military Justice, 10 USC § 933 and 934, respectively. Thus, in examining those offenses, one must look at the elements in Part IV of the Manual. If the elements are the same, then one employs the pleadings-elements test.[2] As we said in *Weymouth*, one examines "those elements required to be alleged in the specification, along with the statutory elements[.]" 43 MJ 329, 340 (1995).

3. When an offense is alleged under Article 134 and one is contrasting it with offenses from Articles 80 to 132, UCMJ, 10 USC §§ 880 to 932, respectively, one may assume that implicit within them is an element of prejudice to good order and discipline. *United States v. Foster*, 40 MJ 140 (CMA 1994).

4. If the statutory elements are the same because, for example, more than one offense is alleged under the same Article or paragraph in Part IV of the Manual, then our practice and the federal practice is to apply the pleadings-elements test.

In *United States v. Wheeler*, 40 MJ 242, 246–47 (CMA 1994), and *United States v. Foster*, 40 MJ at 145 n. 5, the Court expressly referenced the pleadings in resolving the multiplicity issues. Then–Judge Cox emphasized the pleadings-elements approach in *Weymouth* by pointing out that the Manual and the Due Process Clause of the Fifth Amendment require such allegations as to put defendants on notice. But the Court did note that it "need not decide here if the Government could create a lesser offense merely b[y] alleging extra, non-essential elements." *Weymouth*, 43 MJ at 337 n. 5.

Recently, the Supreme Court in *Rutledge v. United States*, —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), addressed the question of lesser-included offenses and applied the pleadings-elements approach. The Court spoke in terms of whether the statute defines the "same offense," *id.* at ——, 116 S.Ct. at 1245, and looked at the "proof of a number of elements." *Id.* at ——, 116 S.Ct. at 1246. The term "statutory elements," which causes the problem as to these catchall provisions, was only used in a footnote. *Id.* at ——, 116 S.Ct. at 1249 n. 14. The Court stated: "In accord with principles rooted in common law and constitutional jurisprudence, we presume that 'where two statutory provisions proscribe the "same offense," a legislature does not intend to impose two punishments for that offense.' " *Id.* at ——, 116 S.Ct. at 1245. *See also Weymouth*, 43 MJ at 342 (Crawford, J., concurring in the result) ("what is a lesser-included offense is grounded in common law"). The Supreme Court examined whether a specific offense "requires proof of a

---

cluded offense of indecent assault—indecent acts is not listed as a lesser-included offense in the Table of Commonly Included Offenses (Appendix 12) in Manual for Courts–Martial, United States, 1969 (Revised edition) or Manual for Courts–Martial, United States, 1951); *United States v. Brownlow*, 39 MJ 484, 485 (CMA 1994) (rejected ultimate-offense doctrine as to missing movement and disobedience of an order); *United States v. Schneider*, 38 MJ 387, 392 (CMA 1993) (The Court stated that since appellant could have been tried for first degree assault or its equiva-

lent in the court-martial even though he was acquitted in state court, defendant could be tried by the military for conduct unbecoming an officer by falsely testifying in the state proceedings.); *United States v. Johnson*, 38 MJ 88, 89 (CMA 1993) ("adultery with the same woman at divers times and places constitutes separate offenses").

2. *See generally Developments in the Substantive Criminal Law Under the Uniform Code of Military Justice*, The Army Lawyer 5, 21–23 (March 1996).

number of elements that need not be established" by the lesser offense. Conversely, the Court noted that there must also be an examination of whether the lesser offense requires "proof of any element that is not part of the" greater offense. *Rutledge,* —— U.S. at ——, 116 S.Ct. at 1246.

In *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977) the Court examined the pleadings-elements test, stating:

> The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States,* 284 U.S. 299, 304 [52 S.Ct. 180, 182, 76 L.Ed. 306] (1932): "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not...." This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes...."

*See* 43 MJ 65, 67 n. 2 (The versions are different.).

The application of federal practice is most appropriate, because Article 36, UCMJ, 10 USC § 836, mandates that the military follow the procedural rules applicable in United States district courts unless the President "considers" doing that to be impracticable. *See also United States v. Scheffer,* 44 MJ 442 (1996); *compare United States v. Evans,* 35 MJ 306 (CMA 1992), *with Pennsylvania v. Labron,* —— U.S. ——, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

An additional basis for the pleadings-elements approach and the examination of Part IV of the Manual is found in Article 56, UCMJ, 10 USC § 856, which grants the President power to determine the "punishment which a court-martial may direct" for an offense. Thus, in the absence of express statutory elements, Part IV and Article 56 control. Drafters' Analysis to Introduction, (1) Discussion, states:

> In this Manual, if matter is included in a rule or paragraph, it is intended that the matter be binding, unless it is clearly expressed as precatory.... If the President has adopted a rule based on a judicial decision or a statute, subsequent repeal of the statute or reversal of the judicial decision does not repeal the rule.

Manual, *supra* (1995 ed.) at A21–3.

The pleadings-elements approach is the rule used in a majority of state jurisdictions. Shellenberger and Strazella, *The Lesser Included Offense Doctrine in the Constitution: The Development of Due Process and Double Jeopardy Remedies,* 79 Marq.L.Rev. 1, 11 n. 20 (1995).

The pleadings-elements as to specification 1 in this case are as follows:

(a) That or near California City, California, on divers occasions between on or about 6 July 1991, and on or about 26 June 1992, the accused committed a certain act with JAW by touching her private parts and inserting his finger in her vagina, and having her place her hands on his penis;

(b) That, at the time of the alleged acts, JAW was a female under 16 years of age;

(c) That the acts of the accused were indecent;

(d) That JAW was a person not the spouse of the accused;

(e) That the accused committed the act with the intent to gratify the sexual desires of the accused; and

(f) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

As to specification 2, the pleadings-elements are as follows:

(a) That at or near California City, California, on divers occasions between on or about 6 July 1991 and on or about 26 June 1992, the accused committed a certain act with JAW by exposing his penis and masturbating in the presence of JAW;

(b) That, at the time of the alleged acts, JAW was a female under 16 years of age;

(c) That JAW was a person not the spouse of the accused;

(d) That the acts amounted to taking indecent liberties with JAW;

(e) That the accused committed the act with the intent to gratify the sexual desires of the accused;

(f) That the accused committed the act in the presence of JAW; and

(g) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

Para. 3–156, Military Judges' Benchbook at 3–313 (Dept. of the Army Pamphlet 27–9 (Change 3, Feb. 15, 1989)).

The judge found that these two distinct offenses were committed on different days and separated by a period of time. 45 MJ at 194, 199, 200. Thus, they are not multiplicious.

EVERETT, Senior Judge (dissenting):

Since its early days, the then-Court of Military Appeals has labored to delineate the circumstances under which offenses were separable for purposes of pleading and punishment. *See, e.g., United States v. Redenius,* 4 USCMA 161, 15 CMR 161 (1954). Even as the Court has taken a new title, *see* — U.S. —, — n. 1, 115 S.Ct. 2031, 2034 n. 1, 132 L.Ed.2d 136 (1995), it still has not completed this task—as the divergence and length of opinions in this case makes clear.

Rather than complicate the relevant issues unduly, I shall be brief in my views. In the first place, this case involves no issue of double jeopardy, for the accused was prosecuted only once; and the Fifth Amendment comes into play only when there are successive trials. *Cf. Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, our primary concern must be with legislative intent; and on this point the *Blockburger* test provides guidance. *See Blockburger v. United States,* 284 U.S. 299,

52 S.Ct. 180, 76 L.Ed. 306 (1932); *Rutledge v. United States,* — U.S. —, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

Unfortunately, in the present context, applicability of *Blockburger* is obscured by the generality of the language of the first two clauses of Article 134, Uniform Code of Military Justice, 10 USC § 934. These clauses refer to conduct "to the prejudice of good order and discipline in the armed forces" or "of a nature to bring discredit upon the armed forces." This same language appears in the discussion of the elements of both "indecent acts" (¶ 87b(1)(e)) and "indecent liberties" (¶ 87b(2)(f)) in Part IV of Manual for Courts–Martial, United States, 1984, that was in effect at the time of this trial. Thus, it is possible to argue that, if committed at the same time with the same victim, an "indecent act" and an "indecent liberty" were nothing more than a single offense within the contemplation of Congress—that offense being "disorderly or service-discrediting conduct." Of course, the same argument could be made with respect to any other act that was not a violation of Articles 77–132, UCMJ, 10 USC §§ 877–932, respectively, that was service-discrediting or disorderly, and occurred at the same time and place.

Since such an interpretation goes beyond what I believe Congress intended, I must search for a rationale in differentiating one violation of Article 134 from another. In this regard, Manual language provides some guidance. Thus, the majority in the court below found the following relevant:

Manuals for courts-martial prescribed by the President have recognized "indecent acts with a child under the age of 16 years" as an offense for more than 40 years. Its application to the Air Force predates the adoption of the UCMJ. *Compare United States v. Brown,* 3 USCMA 454, 13 CMR 10 (1953) and Manual for Courts–Martial, United States, 1951 (MCM, 1951), ¶ 213 *with United States v. Hopp,* 4 CMR (AF) 706 (AFBR 1951) and Manual for Courts–Martial, U.S. Air Forces, 1949 (MCM (AF), 1949), ¶ 183c. The model specification and manual guidance for indecent acts with a child were

drafted from a District of Columbia Code provision. *Brown,* [3 USCMA at 456,] 13 CMR at 12; *Hopp,* 4 CMR (AF) at 715–16. Like the District of Columbia Code offense, the pre–1984 manuals for courts-martial described the prohibitions against indecent liberties with and indecent acts upon children as one offense. MCM, 1969 (Rev.) ¶ 213f(3); ¶ 213d(3); MCM (AF), 1949, ¶ 183c. The earliest judicial interpretation by the Court of Military Appeals is consistent with the notion that indecent acts or liberties with a child is one offense, not two. *Brown,* [3 USCMA at 456–61,] 13 CMR at 12–17. Although the current MCM lists the elements for indecent acts and indecent liberties separately, like its predecessors it provides only one sample specification. MCM, Part IV, ¶ 87b and f.

40 MJ at 749–50.

These circumstances persuade me—as they did the majority below—that when Airman Neblock inserted his finger into his victim's vagina, placed her hands on his penis, exposed his penis, and masturbated in her presence, he committed a single offense for purposes of punishment. Moreover, the maximum punishment permitted for that offense would be that permitted for committing an "indecent act" (¶ 87e)—which would be more serious than for taking "indecent liberties" (¶ 87e).

If, however, on two separate occasions Airman Neblock had touched his victim's vagina, he would have committed two separate indecent acts with her. Likewise, if on two separate occasions he had exposed his penis and had masturbated in her presence without any touching, there would have been two offenses of taking indecent liberties. Finally, if on one occasion he had touched his victim and on another occasion he had masturbated in her presence, these would have been two separate offenses—an indecent act in one instance and taking indecent liberties in an-

other. In all three situations I have described, the offenses are separate, regardless of whether they are motivated by a simple impulse or are part of a "course of conduct," as long as there is some appreciable separation of time or place between the offenses.

Accordingly, in this case the accuser had the option to charge Airman Neblock in a number of specifications corresponding to the different occasions on which there occurred an indecent act, indecent liberties, or both. However, if both occurred on the same occasion, only a single punishment could be imposed. The only limitation on the accuser's discretion would be the Manual's prohibition against unreasonable multiplication of charges. *See* RCM 307(c)(4) Discussion, Manual, *supra.**

Instead of multiplying the charges by separately alleging each incident, the accuser chose to group the incidents into two specifications—alleging in one instance that Airman Neblock had committed "indecent acts" with the victim between two specified dates and in the other that he had taken "indecent liberties" with her "on divers occasions" between those same two dates. Frankly, I applaud this practice—followed extensively in the Air Force—of grouping offenses, rather than alleging them in a multitude of specifications. Of course, an accused can move to sever the specification—and thereby increase the maximum punishment imposable—but seldom would this be done.

Once the accuser has elected to group the offenses in this manner, I conclude that this election carries with it the consequence that only one of the specifications can be used as the basis for punishment. Thus, I reach the same conclusion as did the majority below. I concede, however, that a convincing argument can be made for the result that is reached by the other members of this Court.

---

* Conceivably the undue multiplication of charges could result in a sentence which violated the Eighth Amendment or Article 56, Uniform Code of Military Justice, 10 USC § 856.